UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KEVIN AND JOYCE LUCEY )
and TRACEY LYNN REECE )
EISWERT, individually and )
on behalf of all others ) C.A. 11-md-02208-MAP
similarly situated, ) C.A. 10-cv-30163-MAP
        Plaintiffs )
           v. )
 )
PRUDENTIAL INSURANCE )
COMPANY OF AMERICA, )
        Defendant )

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT
(Dkt. No. 22)

May 5, 2011

PONSOR, D.J.

I. INTRODUCTION

Plaintiffs[1] bring this putative class action on behalf of beneficiaries of life insurance policies issued by Defendant Prudential Insurance Company of America to

---

[1] Named Plaintiffs are Kevin Lucey, Joyce Lucey, Jorge Castro, Susana Ferro, Carlos Gonzalez, Maria Gonzalez, Karen Meredith, George D. Patrin, Barbara Phillips, and Veterans and Military Families for Progress.

servicemembers and veterans of the United States military.[2]
The seven-count amended complaint alleges violation of 38
U.S.C. § 1970(d) and 38 C.F.R. 9.5 (Count 1); Breach of
Contract (Count 2); Breach of Implied Covenant of Good Faith
and Fair Dealing (Count 3); Unjust Enrichment/Money Had and
Received (Count 4); Fraud (Affirmative Misrepresentation)
(Count 5); Fraud (Omission) (Count 6); and Breach of
Fiduciary Duty/Constructive Trust (Count 7). (Dkt. No. 8,
Am. Compl.)

The court held a status conference and heard oral argument on the motion to dismiss on March 18, 2011. Observing that Plaintiffs had filed the original complaint nearly nine months prior, in July 2010, the court denied the motion to dismiss from the bench and requested proposed scheduling orders from the parties in order to facilitate discovery. The following is an explanation of the court's reasons for denying the motion to dismiss.

## II.  FACTS

---

[2] On February 4, 2011, the United States Judicial Panel on Multidistrict Litigation issued a Transfer Order transferring a similar case pending in the District of New Jersey, Phillips, et al. v. Prudential Ins. Co. of Am., et al., D. N.J., C.A. No. 2:10-05375, to this court for coordinated or consolidated pretrial proceedings. (Dkt. No. 58.) Subsequently, two additional cases filed in the District of New Jersey were consolidated here as well, D. N.J., C.A. 2:10-06077; D. N.J., C.A. 2:10-06835.

Pursuant to 38 U.S.C. § 1970, the Servicemembers Group Life Insurance Act (the "SGLIA"), active servicemembers, veterans, and Reservists are eligible for life insurance through two federally subsidized life insurance programs -- Servicemembers Group Life Insurance ("SGLI") and Veterans Group Life Insurance ("VGLI"). The statute provides that the group contracts will automatically insure servicemembers and their dependents, subject to their right to decline coverage, at a maximum coverage amount that is currently $400,000. With regard to this case, the most important provision of the statute concerns the distribution of the proceeds to the beneficiaries. The statute provides:

> (d) The member may elect settlement of insurance under this subchapter <u>either in a lump sum or in thirty-six equal monthly installments</u>. If no such election is made by the member the beneficiary or beneficiaries may elect settlement either in a lump sum or in thirty-six equal monthly installments. If the member has elected settlement in a lump sum, the beneficiary or beneficiaries may elect settlement in thirty-six equal monthly installments.

38 U.S.C. § 1970(d) (emphasis added).

In 1965, Defendant and the United States Department of Veterans Affairs ("VA") entered into a contract to implement the life insurance programs. Although the contract has been amended multiple times, the relevant provisions have remained substantively identical throughout its life. The iterations of the contract at issue here are those from 2001

through 2007, which provide that the insured "may elect settlement of insurance either in a lump sum or in thirty-six equal monthly installments" and that "[p]ayment shall include interest at a rate to be determined by the Insurance Company."  (Dkt. No. 24, Ex. 2, at 56-58, Article I, §§ 2, 4.)

It appears undisputed that the vast majority of insureds elect the lump-sum option.  Plaintiffs' decedents all elected the lump-sum option, and the Class will only include those beneficiaries whose decedents elected the lump-sum option.

Until June 1999, upon notice of the death of an insured who had requested payment in a lump sum, Defendant mailed a check for the lump-sum amount to the beneficiary.  According to the complaint, in June 1999, Defendant changed its practice.  (Dkt. No. 8, Am. Compl. ¶ 21.)  As described in Defendant's Servicemembers' and Veterans' Group Life Insurance Handbook, the beneficiary no longer received a check in the mail.  Instead,

> [i]f the insured member elects a lump-sum payment, the beneficiary(ies) will receive the funds through an Alliance Account.  An Alliance Account is an interest bearing draft account with an account book similar to a checking account. Insurance proceeds are deposited in the beneficiary's name and the beneficiary can write drafts for any amount up to the full amount of the proceeds.

4

(Dkt. No. 24, Ex. 6, at 37.)

In 2000, the VA issued a handbook called "Government Life Insurance Programs for Veterans and Members of the Uniformed Services," which described the payment options as either the thirty-six-month payout or:

> If the proceeds are to be paid in a lump sum then beneficiaries of SGLI and VGLI will receive the payment of their insurance proceeds via an "<u>Alliance Account</u>". Rather than the traditional single check for the full amount of insurance proceeds, the beneficiary now receives a checkbook for an interest bearing account from which the beneficiary can write a check for any amount of $250 up to the full amount of the proceeds. The Alliance Account
> * earns interest at a competitive rate
> * is guaranteed by Prudential
> * gives the beneficiary time to make important financial decisions while their funds are secure and earning interest
> * gives them instant access to their money at all times

(Dkt. No. 24, Ex. 7 at 6 (emphasis in original).)

Upon notice of the death of the insured, Defendant sends the beneficiary/ies a "checkbook" that provides access to the proceeds in the Alliance Account. The beneficiary can write drafts of $250.00 or greater either to the beneficiary him or herself or to a third party. The beneficiary may write a draft for the entire amount of the proceeds in order to close the account. Conversely, the beneficiary may also retain the proceeds in the Alliance Account indefinitely and operate the account as a checking

5

account.  Although the beneficiary receives a statement regarding account activity in his or her specific Alliance Account, the proceeds allotted to the Alliance Account remain in Defendant's general account.  (Dkt. No. 8, Am. Compl. ¶ 36.)

## III. DISCUSSION

Plaintiffs' allegations arise out of the procedure for distribution of the lump-sum payout via the Alliance Account.  Plaintiffs contend that the procedure is not in accordance with the terms of Defendant's contracts either with the insureds or with the VA because giving a beneficiary access to an Alliance Account is not equivalent to mailing a check to the beneficiary in the amount of the lump sum.  Moreover, Plaintiffs allege that Defendant is aware that grief-stricken beneficiaries will often not seek an immediate payout of the lump-sum amount, and that Defendant is benefitting by maintaining, and accruing interest on, the proceeds in its own general account.  Although the Alliance Account generates some interest for the beneficiary, Plaintiffs allege that it is only a fraction of the interest that Defendant earns for itself on the retained funds.  (Dkt. No. 8, Am. Compl. ¶ 117.)

Defendant argues in response that its obligation to send a payment in a lump sum is satisfied by sending a

checkbook that provides access to the lump sum. Based essentially on this argument, it has moved to dismiss all counts of the complaint for failure to state a claim.

A. <u>Standard of Review</u>.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim for relief that is both actionable as a matter of law and "'plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). When assessing a complaint's sufficiency, a court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of a plaintiff. <u>Edes v. Verizon Communs.</u>, 417 F.3d 133, 137 (1st Cir. 2005); Fed. R. Civ. P. 12(b)(6).

This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." <u>United States v. AVX Corp.</u>, 962 F.2d 108, 115 (1st Cir. 1992). <u>Accord</u> <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 49 (1st Cir. 2009) (noting that pleadings that are no more than conclusions "are not entitled to the assumption of truth") (citing <u>Iqbal</u>, 129 S. Ct. at 1950). Ultimately, a complaint must "set forth 'factual allegations, either direct or inferential, respecting each

7

material element necessary to sustain recovery under some actionable legal theory.'" Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).

B.   Threshold Issues.

Defendant contends at the outset that Plaintiffs have failed to allege any cognizable injury because, Defendant argues, there is no material distinction between receiving a check in the mail and writing a draft against a checking account. For all intents and purposes, Defendant argues, they are both lump-sum payments. Furthermore, Defendant asserts, Plaintiffs have alleged no damages.

1.   Lump-Sum Payment.

With respect to Defendant's first argument that there is no distinction between the two methods of payment, the First Circuit has explicitly held otherwise. In Mogel v. UNUM Life Ins. Co., in which the plaintiff beneficiaries alleged breach of fiduciary duty under ERISA against the defendant life insurance company, the court unambiguously held that

> delivery of the checkbook did not constitute a "lump sum payment" called for by the policies. As the district court put it, "[t]he difference between delivery of a check and a checkbook . . . is the difference between [the insurance company] retaining or [the insurance company] divesting

possession of Plaintiffs' funds."

<u>Mogel v. UNUM Life Ins. Co. of Am.</u>, 547 F.3d 23, 26 (1st Cir. 2008) (quoting 540 F. Supp. 2d 258, 262 (D. Mass. 2008)). Despite Defendant's exhaustive efforts to distinguish <u>Mogel</u>, the court simply cannot ignore such clear and pointed direction from the First Circuit. A lump-sum payment by check (which actually transfers the funds to the beneficiary) is simply not the same as a lump-sum payment by checkbook (which allows the insurance company to retain the funds and earn interest on them).[3] It is important to underline that this finding only bears on the motion to dismiss presently before the court. The question whether Defendant breached its contract, or is liable under one or more of the other theories offered in the amended complaint, remains for further proceedings.

2. <u>Damages</u>.

Defendant's second argument that Plaintiffs have alleged no damages is similarly unfounded. Plaintiffs contend that Defendant has unlawfully retained some of the interest earned from funds kept in Alliance Accounts, and

---

[3] Defendant relies primarily on a footnote in an unpublished opinion in which the Second Circuit discounted the plaintiff's reliance on <u>Mogel</u> because the contract at issue authorized non-lump-sum payments. See <u>Rabin v. MONY Life Ins. Co.</u>, 387 Fed. Appx. 36, *39 n.1 (2d Cir. 2010). This opinion is not controlling and, to the extent it is relevant, is unpersuasive.

they seek restitution of such monies. Specifically, the complaint alleges:

> Although Prudential credits beneficiaries with some trivial amount of interest on the funds it detains through its Alliance Account® scheme, it only credits as much interest as it decides in its self-serving discretion. On information and belief, that rate has ranged from .5% to 1.5% while Prudential actually made 5-6% on its use of the money it withheld from beneficiaries pursuant to this Alliance Account® scheme.

(Dkt. No. 8, Am. Compl. ¶ 25.) Plaintiffs further allege injury from Defendant's "abhorrent behavior [that is] not to be tolerated in a civilized society, and warrants the imposition of punitive and exemplary damages." (Id. ¶ 117.)

It is true that pleadings that are solely conclusory "are not entitled to the assumption of truth." Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009). Here, however, Defendant admitted at the hearing that the interest it has earned on the Alliance Accounts is more than the interest it pays. This theory of damage, at this stage, describes a sufficiently cognizable injury to avoid dismissal.

Apart from the arguments seeking dismissal of the entire complaint, Defendant contends that individual counts should be dismissed for more narrowly focused reasons.

C.  Count 1: Violation of 38 U.S.C. § 1970(d).

Defendant seeks dismissal of Count 1 on the grounds

that the SGLIA, 38 U.S.C. § 1970, confers no private right of action.  Again, despite Defendant's painstaking attempt to distinguish the many cases holding otherwise, the court is unpersuaded by its arguments.  To be sure, Defendant accurately points out that the majority of SGLIA cases to date concern the fairly straightforward issue of withholding proceeds.  See <u>Hubbert v. Prudential Ins. Co. of Am.</u>, No. 2:06-cv-260, 2007 WL 1031638, *3 (W.D. Mich. Apr. 3, 2007) ("Federal courts have held that a cause of action exists under the SGLIA for a beneficiary of a life insurance policy to pursue a claim against the insurer for the proceeds of that policy."); <u>Cotton ex rel. Boynton v. Prudential Ins. Co. of Am.</u>, No. 3:05-cv-46-RS, 2006 WL 212016, *3 (N.D. Fla. Jan. 27, 2006) (In case regarding withheld proceeds, the court held "that an implied cause of action is granted to beneficiaries under the SGLI statute against the OSGLI."); <u>Parker v. Office of Servicemembers' Group Life Ins.</u>, 91 F. Supp. 2d 820, 825 (E.D. Pa. 2000) ("[T]he overall structure and purpose of the statute convince us that Congress intended to create a right of action which allows a beneficiary of a life insurance policy issued under the SGLIA to pursue a federal claim against the insurer for proceeds withheld.").  However, the Tenth Circuit was presented with a more nuanced issue and, after substantial

analysis, determined that the SGLIA confers a private right of action on beneficiaries with no apparent limitations. Rice v. Office of Servicemembers' Group Life Ins., 260 F.3d 1240 (10th Cir. 2001).

In Rice, the plaintiff brought suit against the Office of Servicemembers Group Life Insurance ("OSGLI"), a subsidiary of Prudential, regarding the effectiveness of a last-minute change in beneficiary of her husband's policy just prior to his suicide. The Tenth Circuit engaged in an extensive discussion about whether state or federal law should apply to the determination of the insured's mental capacity, concluding both that federal common law applied and that "the federal SGLI statute gives rise to an implied private cause of action." Id. at 1245. The court observed that "[t]he statute requires beneficiaries to make 'claim[s]' for payment under some circumstances, but contains no mechanism (administrative or otherwise) to enforce the insurance contract." Id. at 1246. Additionally, "the applicable regulations contemplate that beneficiaries may bring '[a]ctions at law or in equity to recover' from the [SGLI]." Id. at 1247 (quoting 38 C.F.R. § 9.13). The Tenth Circuit concluded that, "[a]lthough the text of the SGLI statute is silent, we believe its structure shows that Congress intended to allow private causes of

12

action to enforce the provisions of SGLI policies." Id. at 1246. This court agrees and will deny Defendant's motion to dismiss Count 1 on the grounds that the case law, limited as it may be, unanimously supports a finding that a private cause of action exists under the SGLIA.

D.  Count 2: Breach of Contract.

In Count 2, Plaintiffs allege that a breach of contract occurs each time that an insured elects the lump-sum option and Defendant then provides that lump sum through an Alliance Account, instead of through a check made out to the beneficiary. As noted, Defendant argues that the two processes are analogous. Assuming all well-pleaded facts to be true, see Edes, 417 F.3d at 137; Fed. R. Civ. P. 12(b)(6), and noting the First Circuit's holding with regard to the distinction between a check and a checkbook, the court will deny Defendant's motion to dismiss Count 2.

E.  Count 3: Breach of the Implied Covenant of Good Faith and Fair Dealing.

Defendant's argument in support of its motion to dismiss Count 3 rests on its claim that the distribution of lump-sum proceeds by check is no different from the distribution of lump-sum proceeds via an Alliance Account. For the reasons set forth above, the court cannot, at this stage, find this to be true as a matter of law. Thus,

13

Defendant's motion to dismiss Count 3 will be denied.

F.  Count 4: Unjust Enrichment/Money Had and Received.

Defendant argues that the contract between the parties precludes Plaintiffs from bringing this claim because, in Massachusetts, the equitable remedy of unjust enrichment is not available to parties with an adequate remedy at law. See Infusaid Corp. v. Intermedics Infusaid, Inc., 739 F.2d 661, 668 (1st Cir. 1984) ("[I]f there is an adequate remedy at law, equitable relief is unavailable."); Santagate v. Tower, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005) (same). As noted at the hearing, Plaintiffs have clearly alleged this count as an alternative legal theory should their breach of contract count ultimately fail. Accordingly, the court will, for now, deny Defendant's motion to dismiss Count 4.

G.  Count 5: Fraud (Affirmative Misrepresentation).

Federal Rule of Civil Procedure 9(b) includes a heightened pleading standard for fraud claims. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Although Defendant does not contest the sufficiency of Plaintiff's specific allegations of fraud, Defendant contends, as a threshold matter, that Plaintiffs' failure to specifically allege that they read the statements that they now allege to be false undercuts their assertion

that they relied on those statements.  See Wells v. Monarch Capital Corp., No. 91-10575-MA, 1991 U.S. Dist. LEXIS 20789, *39-40 (D. Mass. Aug. 23, 1991) (finding pleadings inadequate where plaintiff alleged that "he relied 'directly or indirectly' upon the defendants' misrepresentations . . . [but did] not state that he read any of the allegedly false documents").  Defendant is mistaken.  While Plaintiffs did not use the word "read," their allegations refer to specific quotations within the standard form documents that all Alliance Account beneficiaries receive.  (Dkt. No. 8, Am. Compl. ¶ 86(a)-(g).)  Clearly, Plaintiffs could not cite to these quotations without having first read them.  Moreover, Plaintiffs alleged that they received the Alliance Account information in the mail and relied on it.  (Dkt. No. 8, Am. Compl. ¶¶ 30-35 (alleging that Defendant sent each named Plaintiff a checkbook and "represented in writing that the check book was the lump sum payment to which they were entitled under the policy" and that each named Plaintiff "had no reason to doubt Prudential's written representations").)  The court thus finds that Plaintiffs have satisfied the particularity requirement of Rule 9(b).  Fed. R. Civ. P. 9(b).

Moving to the substance of Plaintiffs' allegations, Plaintiffs allege that Defendant has affirmatively

misrepresented how the Alliance Account works.  Defendant argues that the contested statements are, at worst, ambiguous and that the ambiguity is immaterial.

While some of Plaintiffs' allegations may not withstand further scrutiny, at least two satisfy, for the purposes of this motion, the required elements of a fraud claim.  See Armstrong v. Rohm & Haas Co., 349 F. Supp. 2d 71, 81 (D. Mass. 2004) (citing Reisman v. KPMG Peat Marwick LLP, 787 N.E.2d 1060, 1066-67 (Mass. App. Ct. 2003)) (holding that to prove fraud, a plaintiff must "show that (1) the defendant made a false representation of material fact, (2) with the knowledge of its falsity, (3) for the purpose of inducing the plaintiff to act in reliance thereon, (4) the plaintiff relied upon the representation, (5) the plaintiff acted to his detriment.").  First, Plaintiffs allege that Defendant's claim that it will satisfy the insured's selection of the lump-sum payment option by creating an Alliance Account is false because the Alliance Account is not equivalent to a lump-sum payment.  Second, Plaintiffs allege that Defendant's statement that the Alliance Account is a personal interest-bearing account is false because the account is not personal and the interest is credited at Defendant's discretion and not by a legal instrument setting an interest rate.  (Dkt. No. 8, Am. Compl. ¶ 86.)  These two

statements, which suggest that Defendant intentionally misrepresented essential elements of the Alliance Account in order to induce beneficiaries to maintain the insurance proceeds in the accounts, are sufficient to overcome Defendant's motion to dismiss Count 5.

H.   Count 6: Fraud (Omission).

Plaintiffs allege that Defendant withheld numerous material facts from Plaintiffs, including that Defendant was earning up to five or ten times more interest than it was paying beneficiaries. (Dkt. No. 88, Am. Compl. ¶ 97 (c).) As with Count 5, while the allegations of this count may narrow after discovery, Count 6 cannot at this stage be dismissed.

I.   Count 7: Breach of Fiduciary Duty/Constructive Trust.

Plaintiffs' allegations regarding breach of fiduciary duty arise not out of Defendant's role as holder of the life insurance policy, but instead out of Defendant's role as holder of the insurance proceeds between the time of the death of the insured who elected a lump-sum payment and the time at which the beneficiary actually possessed that lump sum. Because Defendant benefits from the use of the money during this time, Plaintiffs argue, it has a fiduciary duty to Plaintiffs. Defendant argues, to the contrary, that any duties that it owes Plaintiffs cease once it makes the

17

insurance proceeds available via the Alliance Account, because its sole duty under the contract is to pay the proceeds in a lump sum. This assertion, of course, rises and then falls on Defendant's underlying contention that the creation of the Alliance Account is the equivalent of the mailing of a check for the lump sum.

Defendant's argument is further stymied by the First Circuit's holding in <u>Mogel v. UNUM</u>, that

> [the insurer] cannot be said to have completed its fiduciary functions under the plan when it set up the Security Accounts and mailed the checkbooks, retaining for its use the funds due until they were withdrawn. . . . [U]ntil the beneficiaries received the lump sum payments to which they were entitled, [the insurer] remained obligated to carry out its fiduciary duty under the plan.

<u>Mogel v. UNUM Life Ins. Co. of Am.</u>, 547 F.3d 23, 26 (1st Cir. 2008). In light of this authority, Defendant's motion to dismiss Count 7 must be denied.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss the Amended Complaint (Dkt. No. 22) is hereby DENIED. Counsel appeared for a scheduling conference on April 27, 2011, and a separate scheduling order will issue this day.

It is So Ordered.

/s/ Michael A. Ponsor
                                    MICHAEL A. PONSOR
                                    U. S. District Judge